Juan Polanco, #28984-050
LSCI Allenwood
P O Box 1000
White Deer, PA 17887

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JUAN POLANCO,                          :     Case No. 1:19cv865
                    Plaintiff,         :
                                       :
        v.                             :
                                       :
UNITED STATES OF AMERICA,              :
HUGH J. HURWITZ,                       :
JUSTIN RAY ORMOND,                     :
DARRIN HOWARD,                         :     28 U.S.C. § 1657(a)
DOUGLAS K. WHITE                       :
M. WASHINGTON,                         :
BRUCE BEAVER,                          :     JURY TRIAL DEMANDED
MICHELLE BLACKWELL,                    :
J. WALLACE,                            :                **FILED**
MARK THOMPSON,                         :              **SCRANTON**
AMY FOURA-WHITE,                       :              MAY 1 7 2019
R. SCHREFFLER,                         :     _____
J. FOURA,                             :     PER _____
J. PHILLIPS,                           :              DEPUTY CLERK
                    Defendant.         :

COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT AND BIVENS

        Plaintiff, JUAN POLANCO, files this action for damanges under Bivens for
violations of his First, Fourth and Fifth Amendment rights. The Plaintiff also
brings this action under the Federal Tort Claims Act, 28 U.S.C. § 2671, et
seq. for the tortious acts alleged herein, the Declaratory Judgment Act, 28
U.S.C. § 2201.

        Plaintiff avers based upon personal knowledge as to his own acts, acts
witnessed as being done by others, documents reviewed or otherwise upon information
and belief:

## JURISDICTION AND VENUE

1.   This Court has jurisdiction over the Plaintiff's claim of violation of Federal Constitutional rights under 28 U.S.C. § 1331 and 28 U.S.C. § 1346(b)(1). This Court also has jurisdiction over the tortious acts under the Federal Tort Claims Act ("FTCA") pursuant to 28 U.S.C.§ 2671, et seq.

2.   The Plaintiff has exhausted all available remedies except those that were thwarted by misconduct of the Defendants, in addition to submitting an SF-95 Claim Form for $3,000,000.  The SF-95 claim was denied in April, 2019.

3.   Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) and (e), among other things, a substantial part of the events or omissions giving rise to the claims occurred within the Middle District of Pennsylvania.

## PARTIES

4.   The Plaintiff, Juan Polanco ("Polanco" or "Plaintiff") is currently confied at LSCI Allenwood during the events described in this complaint. Plaintiff is a citizen of the United States and his current mailing address is P O Box 1000, White Deer, PA 17887.  His register number is 28984-050.

5.   Defendant UNITED STATES OF AMERICA ("United States") exercises control, supervision, direction of it's staff, practices, policies, procedures, training, and disciplinry action against staff and operates a number of prisons through-out the United States.

6.   The United States is an appropriate party, with certain exceptions, for injuries caused by the negligent or wrongful act or omission of any federal employee acting within the scope of his or her employment in accordance with the law of the State where the act or omission occurred.

7.   The Federal Bureau of Prisons ("BOP") is a component of the U.S. Department of Justice ("DOJ"), an executive level department of the United States of America.  The BOP is controlled by the United States who supervises, directs, trains, oversees, and manages its operation and staff.

8. The United States of America is an appropriate party for injuries caused by investigative and law enforcement officers arising out of false imprisonment, false arrest, negligence, negligent supervision, malicious prosecution and negligent misrepresentation. The BOP employees fall under the investigative and law enforcement officer defined by 28 U.S.C. § 2680(h) and are not immune from suit.

9. Defendant Hugh J. Hurwitz ("Hurwitz") is the acting Director of the BOP. As Director, Hurwitz is responsible for the supervision, direction, training, overseeing, and management of the operations and staff of the BOP as well as the policies, procedures, and disicplinary actions against staff. At all relevant times, this defendant was acting as the agent, servant and employee of the United States and was acting within the scope of his employment with the permission and consent of the United States. This defendant is sued in his individual and official capacity.

10. Defendant Justin Ray Ormond ("Ormond" is a Regional Director of the BOP Northeast Region ("NERO") which includes LSCI Allenwood. As Regional Director, Ormond is responsible for the supervision, direction, training, overseeing, management of the operations of the staff within NERO as well as ensuring compliance with policies, procedures, and taking disciplinary actions against staff. Ormond is required to investigate complaints of staff misconduct. At all relevant times, this defendant was acting as the agent, servant and employee of the United States and was acting within the scope of his employment with the permission and consent of the United States. This defendant is sued in his individual and official capacity.

11. Defendant Darrin Howard ("Howard") is the Regional Counsel for NERO. As Regional Counsel, Howard without permission has been signing Administrative Remedies that reports staff misconduct and other conduct which attempts to cover-up and conceal prohibited activities at LSCI Allenwood from being reported to others and without proper investigation. Howard is required to comply with all BOP policies, regulations, procedures, practices. Howard is also charged with investigating violations and risk of litigation due to staff negligence, misconduct and inmate injuries. At all relevant times, this defendant was acting as an agent, servant, and employee of the Untied States and was acting within the scope of his employment with the permission and consent

3

of the United States.  This defendant is sued in his individual and official capacity.

12.  Defendant Douglas K. White ("White") is the Warden at LSCI Allenwood. As Warden, White exercises control, supervision, management of the institution and it's day to day operation.  White is also responsible for the training, direction, supervision, management, conduct and discipline of the staff at the institution.  At all relevant times, this defendant was acting as the agent, servant and employee of the United States within the scope of his employment and with the consent and permission of the United States.  This defendant is sued in his official and individual capacity.

13.  Defendant M. Washington ("Washington") is an Associate Warden at LSCI Allenwood.  As Associate Warden, Washington exercises control, supervision, management of the institution and it's day to day operation.  In the absence of the Warden, White acts as Warden.  Washington is also responsible for discipline, training, supervision, hiring and conduct of the staff at the institution. At all relevant times, this defendant was acting as the agent, servant and employee of the United States within the scope of his employment and with the consent and permission of the United States.  This defendant is sued in his individual and official capacity.

14.  Defendant Bruce Beaver ("Beaver") is the  Case Management Coordinator for LSCI Allenwood and was the Unit Manager for Lycoming Unit which housed Plaintiff.  As Unit Manager, Beaver is the administrative head of the general unit and oversees all unit programs and activities.  The unit Manager reviews all team decisions and chairs the Unit Discipline committee.  The Unit Manager also has direct responsibility for the Case Manager and Correctional Counselor's work.  Beaver is also responsible for the training, supervision, discipline and retention of the Case Manager and Correctional Counselor.  At all relevant times, this defendant was acting as the agent, servant and employee of the United States within the scope of his employment and with the consent and permission of the United States.  This defendant is sued in his individual and official capacity.

15.  Defendant Michelle Blackwell ("Blackwell") is the DAPC and was acting unit manager  between September  2018 and December, 2018.  Blackwell has all

the same responsibilities as Beaver.  At all relevant times, this defendant
was acting as the agent, servant and employee of the United States within
the scope of her employment and with the consent and permission of the United
States.  This defendant is sued in her individual and official capacity.

16.  J. Wallace ("Wallace") was the acting Unit Manager between January,
2019 and February, 2019.  As acting Unit Manager, Wallace had the same responsibili-
ties as Blackwell.  At all relevant times, this defendant was acting as the
agent, servant and employee of the United States within the scope of his employment
and with the consent and permission of the United States.  This defendant
is sued in his individual and official capacity.

17.  Defendant Mark Thompson ("Thompson") is plaintiff's assigned correctional
counselor.  The Correctional Counselor provides inmates with administrative
remedy forms and investigates the informal resolutions (BP-8) and is required
to sign the BP-8 with a response after completing the informal resolution
investigation.  The Correctional Counselor is also required to deliver to
the Administrative Remedy Clerk all formal BP9 adminsitrative remedy submitted
to him. At all relevant times, this defendant was acting as the agent, servant
and employee of the United States within the scope of his employment and
with the consent and permission of the United States. This defendant is sued
in his individual and official capacity.

18.  Defendant Amy Foura-White ("Foura-White") is plaintiff's assigned
case manager.  As plaintiff's case manager, Foura-White is responsible for
call casework and prepares classification material, progress reports release
plans, correspondence and other materials relating to the inmate's commitment.
The case mnager is supervised by the Unit manager.  At all relevant times,
this defendant was acting as the agent, servant, and employee of the United
States within the scope of his employment and with the consent and permission
of the United States.  This defendant is sued in his individual and official
capacity.

19.  Defendant R. Schreffler ("Schreffler") is the Captain for the institution.
As Captain directs, supervises, manages, controls the Correctional officers.
The Cpatain ensures that correctional officers compliance with BOP policy,
disciplinary action and conduct of staff.  At all relevant times, this

defendant was acting as the agent, servant and employee of the United States within the scope of his employment and with the consent and persmission of the United States. This defendant is sued in his individual and official capacity.

20. J. Foura ("Foura") is a correctional lieutenant that oversees the Special Housing Unit at LSCI Allenwood. As the SHU lieutenant he is responsible for ensuring the trianing, supervision, direction and control of the staff working in the SHU in conjunction with the Captain, Associate Warden, Warden, Regional Director and Director. Foura is also responsible for ensuring staff adherence to BOP policy regarding placement of inmate in the SHU. At all relevant times, this defendant was acting as agent, servant and employee of the United States within the scope of his employment and with the consent and permission of the United States. This defendant is sued in his official and individual capacity.

21. Each of the Defendants have created a practice, pattern, and custom that permit institutional staff to abuse their authority, retalitate against prisoners for filing grievances relating to staff misconduct and abuse of authority, depriving them of their liberty interests by wrongfully with wanton and reckless disregard for BOP policy governing such conduct.

22. Each of the Defendnats have created a practice, pattern, and custom of permitting staff to engage in misconduct by falsying information on reports, offical documents and official investigations without any sanctions or disciplinary action to deter such conduct which further emboldens them to continue the abusive and unlawful practices.

23. Each of the Defendants have created a practice, pattern and custom of verbally threating inmates with acts of violence and illegal detention in retaliation of voicing concerns about staff misconduct and abusive behavior, lack of respect towards inmate, verbal abuse of inmates.

24. Officer Phillips is a correctional officer that works in the SHU. As a correctional officer, Phillips is responsible for ensuring the health, safety of the inmates and providing them with the services mandated by BOP and federal regulations. At all relevant times, this defendant was acting as as agent, serveant and employee of the United Srares. This defendant is sued in his personal and official capacity.

6

STATEMENT OF FACTUAL ALLEGATIONS

A.   STATUTORY, REGULATORY AND POLICY FRAMEWORK

25.   The First Amendment protects prisoners rights to be free from retaliation for filing of prison grievances.

26.   The Fourth Amendment protects a person from unreasonable seizures without probable cause.

27.   The Fifth Amendment protects a prisoners right to the deprivation of liberty and due process.

28.   18 U.S.C. § mandates a duty of care, protection and education for prisoners sentenced and serving time by the Defendants. 18 U.S.C. § 4042.

29.   Pursuant to 18 U.S.C. § 3050 limits the ability or basis of when an officer or employee of the Bureau of Prisons may make arrests on or off of BOP property without warrant.

30.   28 C.F.R. § 541.20, et seq. limits the basis and discretion for the placement of prisoners in the Special Housing Unit ("SHU").  Section § 541.25 requires notice be provided within 24 hours and said notice includes a narrative demonstrating clearly objective evidence that the inmate poses a serious threat to the institution.  Section § 541.26 requires the placement decision be reviewed within 24 hour of placement by an independent supervisory correctional officer.  In addition the placement decision is reviewed by the Segregation Review Official ("SRO") within 3 days, 7 days (in person hearing in which inmate can attend) and every 30 days of continous placement to determine if continued placement is warranted via a hearing the inmate can attend. Section § 541.32 requires medical care be provided and to have a mental staff examine the person including a personal interview.  These reviews are required to be documented on the appropriate forms.

31.   Staff are required to obtain approval from a Lieutenant or Captain before placing an inmate in the SHU pending investigation of a disciplinary infraction.  When an inmate is placed in the SHU, an Administrative Detention Order ("ADO") or BP-A308 must be completed by the Lieutenant or other

7

correctional supervisor.  The specific reason for placement in the SHU  must be supported by objective evidence and clearly articulated in the narrative section of the ADO.   A new ADO is required each time the inmate detention status changes. Id.  The person responsible for placement cannot also be the SRO or reviewing correctional supervisory official.

32.  In making Special Housing Determinations, officials are required to consider the seriousness of the alleged offense, including whether the offenses involved violence, involved escape or posed a serious threat to institutional safety or orderly running of the institution.

33.  The SRO reviews include the inmate records while in the SHU (BP-A0292), all available memorandum from staff (including psychology staff), all investigatory memorandums.  The SRO completes a BP-A0295 Special Housing Review of the SHU record and other relevant documentation.

34.  Policy Statement PS 5270.11 mandates quarterly training on policy, procedures and operation of staff assigned to SHU prior to the start of each new quarter, regardless of how may times a staff member has completed the training.

35.  Pursuant to PS 5321.08 the Correctional Counselor is required to make daily visists to their assigned inmates in the SHU.

36.  The BOP Employee Standards of Conduct, PS 3420.11 prohibits employees from, inter alia, "inattention to duty, falsification, misstatement, exaggeration, or concealment of material facts in connectio nwith any record, investigation or other proceeding, intentional violates of rules governing seizures, negligent violations of rules governing seizures, failure to report retaliation, using verbally abusive language, threating to influct injury on another, disrepectful."

37.  The Warden of each institution has the primary responsibility for ensuring the Standard of Employee Conduct are provided and made know to each employee.  The Warden must ensure that staff are made aware of updates and revisions that affect employee conduct and receive annual training on their responsibility in the policy.  Each employee signs an Acknowledgement of Receipt

of Standards of Employee Conduct - BP-A0165.

38.  The BOP Policy prohibits decisions on the basis of arbitrary and capriciousness.

39.  The Regional Director, Regional Counsel and Acting Director share the responsibility of ensuring that the employees of the BOP conduct themselves in accordance with BOP policy in addition to each individual employee.

40.  The BOP Administrative Remedy process is codified at 28 C.F.R. § 542.10, et seq.  The process requires that inmates obtain the required forms BP-8 (informal resolution form), BP9, BP10, BP11 from their correctional counselor. A BP-8 is returned to the correctional counselor who investigates the concern, provides aresponse and signs the form.  If the inmate is not satisfied with the informal resolution, he proceeds to the next level via the appropriate forms.  LSCI has mandated that inmates MUST complete an inmate resolution form and the counselor must sign otherwise it will be rejected and not accepted.

41.  Pursuant to PS5800.17, Attachment A lists all documents which are disclosable to federal prisoners.  LSCI Allenwood has engaged in a pattern practice and custom of lying to inmates that documents such as an Inmate's Form 409 is non-disclosable to conceal staff misconduct and abuse of the management variable system.  They also utilize the same false statements with respect to other information to knowingly, willfully, and wantonly mislead inmates.  The documents listed on Attachment A are fully disclosable without a FOIA request.

42.  Pursuant to PS 5270.09 governing disciplinary process and hearings requires that references to significant prohibited acts that are not supported by disciplinary actions and hearings may not be used by the Bureau in ways that have an adverse impact on an inmate, specifically the forfeiture or disallowance of good time, or a prole recommendation.  Staff may maintain such references in an inmate's central file for use in making classification, administrative transfer, and ottber decisions if the following conditions are met:

# Placement of a reference to 100 or 200 severity level offenses not supported by disciplinary action in an inmate's central file may only be done with the written approval of the Warden of the Instittuion where the incident occurred.  This must be documented in the inmate's central file.  Approval signifies that in the

9

Warden's judgment this information is necessary for proper
management of the inmate.

43.  The Defendant United States of America authorizes, tolerated as
intitutionalized practices, and ratified by misconduct detailed below.

### B.  FACTUAL ALLEGATIONS

44.  On or about November, 2018 Plaintiff hand delivered a BP-8 to the
then acting Unit Manager Blackwell.  Upon Plaintiff's follow-up after receiving
no response, Blackwell advised Plaintiff that she lost his BP-8.

45.  On or about December 27, 2018 Plaintiff wrote to Washington
regarding the BP-8 and requesting a transfer to Fairton Camp or Schulkyl
Camp.  Instead of a response Plaintiff was advised to see Washington at
mainline.  (Exh. '1').   In the same request, Plaintiff requested a copy of
his Form 409 assigning a management variable.

46.  On December 28, 2018 Plaintiff spoke with the White regarding a
transfer.  A follow-up Inmate Request was submitted to the Warden's mailbox
on December 31, 2018.  (Exh. '2').  In response to the request, White pointed
Plaintiff to the new Acting Unit Manager Wallace.  The Warden further advised
that if the 409 was stamped FOI exempt, it will need to be requested through
FOIA.  Defendant Foura-White intentionally stamped FOI Exempt on the document
to cover-up her error in assigning the management variable so it would take
9 months to obtain the FOIA request back.

47.  On January 7, 2019 the Counselor acknoweldge receipt of a BP-8
indicating that Foura-White is poorly educated and trained on what is FOI
Exempt and her using false an unredible information to add a management variable
does not allow her to make the document FOI exempt so that Plaintiff cannot
challenge it and cover-up the abuse of authority and misrepresentation that
a Form 409 is FOI Exempt.  (Exh. '3').

48.  On January 8, 2019 Defendant Foura-White responded to the BP-8
and placed it in the inmate mail.  The response provided "records/documents
that have been determined to be excluded from inmate review are placed in
the Privacy Fodler.  The 409 you have requested contains information deemed

excluded from inmate review.  Therefore, it has been placed in the privacy
folder. (Exh. '3', p.2).

49.  Upon Plaintiff's receipt of the BP-8 in the inmate mail, he took
it to Counselor Thompson who had been extensively absent as his record will
show from work.  Counselor Thompson refused to sign the BP-8 as a means of
obstructing Plaintiff's access to the administrative remedy process. (Exh.
'3').

50.  On Feburuary 4, 2019 Plaintiff completed and submitted a BP-9 to
the next level with three exhibits. (Exh. '4').  On February 7, 2019 the
Remedy Clerk rejected the matter indicating that Plaintiff did not attempt
informal resolution and noted that the informal resolution was not signed.
(Exh. '5').  Plaintiff advised the acting unit manager of the matter.  Wallace
told Plaintiff he did not want to sign.  He further advised to wait on counselor
who had not been to work since February 7, 2019. (Exh. '5').

51.  On February 13, 2019 Plaintiff spoke with Washington at mainline
about the matter of the signature. Instead of addressing the issue he passed
the buck to someone else.  In the absence of the Unit Manager, the Associate
Warden or Washington is next in charge of the Unit Team staff.  Washington
told me to wait for the Unit Manager or speak with Beaver.  Had Plaintiff
waited for the Unit Manager his filing could be held to be untimely.

52.  Plaintiff went over to Beaver and asked whom can he get to sign
his BP8 because the counsel had refused to sign it.  Beaver first tole Plaintiff
to wait for the Unit manager wallace.  Beaver is well aware that the BP9
are sensitive.  Upon Beaver reading the BP8, the response from Foura-White,
Beaver told me to file a BP-10 because the 409 is in the central file, there
is no way no one can be able to give it to you.  Beaver further advised Plaintiff
not to listen to any inmate and try to get my 409 with a remedy, go ahead
and get a freedom of information request.  However, the request/ remedy was
dealing with the use of false information to apply a management variable,
and challenge to that information.  Annexed to the BP9 (Exh. '4') was a copy
of the challenged information.  Plaintiff thanked Beaver for the help.

53.  As Plaintiff was leaving, Beaver said for me to not come back with
this issue in a verbally abusive tone.  Plaintiff asked him what did he say,

Beaver repeated not to come back with this issue again and to get a BP-10 to go straight to the region or get from FOIA.

54. When Beaver indicated this, he had an attitude. Plaintiff asked Beaver if he was threatening him. Beaver called Plaintiff back in front of all the inmates and two staff members. Beaver then asked Plaintiff "what the fuck did you say? Beaver said if Plaintiff was calling him a piece of shit. Plaintiff told Beaver I was not calling him a piece of shit. Plaintiff again asked Beaver if he was threating him.

55. Upon information and belief, Mr. Rothermel the Unit Manager from one of the other units known to racially discriminate against inmates, with the same abusive manner and tone jumped into the conversation and stated "well you're calling him a piece of shit and in reality you are a piece of shit and began threatening to lock Plaintiff up. Rothermel and Beaver began speaking about Plaintiff in a derogatory deameanor and insulting him in his face. The incident was witnessed by serveral inmates to the incident.

56. On February 13, 2019 Plaintiff spoke with White about the issue. Plaintiff started to explain how he was verbally abused by Beaver when he asked about the signature. White stopped Plaintiff and told him to speak with Washington.

57. Plaintiff asked Washington if he remembered him from the previous day. Washington indicated he did. Plaintiff advised Washington that he was verbally abused and threatened by Beaver. Plaintiff was taken in front of Beaver with Washington there. Washington then asked me what happened yesterday. As plaintiff explained what happened about the threatening behavior at which point Beaver was shaking his head negatively to Washington and then Washington told Plaintiff he was lying. Washington seemingly was aunaware of Beaver's disciplinary history of abusive language towards inmates in the past or Mr. Rothermel's discriinatory practices. Washington told Plaintiff Beaver had told him what happened yesterday. It became obvious that Beaver lied to Washington.

58. Washington then told Plaintiff, that he dosen't care about the BP-8 or BP-9 since I lied about it to him. Washington told Plaintiff that he was done with this issue. Washinton further stated "I don't want to hear

about it anymore and that Plaintiff can leave.

59.  Plaintiff memorialized the events in case he was retaliated against by Washington or Beaver.

60.  On the evening of February 13, 2019 Plaintiff sent an Electronic Request to **White** requesting his assistance in resolving the matter.

61.  Plaintiff was awoken at 5:00 AM on February 14, 2019 and was taken to Lieutenant's Office where Lt. Foura was present (upon information and belief).

62.  Foura began accusing Plaintiff of owing people money and that he was trying to get an excuse for plaintiff to get out of here.  Plaintiff advised Foura that he does not owe anyone money.  Foura responded "are you sure about that?" to which Plaintiff responded affirmatively yes, I'm very syre.  Foura then indicated they have other priorty than be focused on Plaintiff.  Foura also asked why Plaintiff sent that email to White.  Plaintiff advised Foura that he felt threatened by Beaver and was just trying to get his issue resolved because no one else will assist him. Plaintiff never said he was threatened.

63.  Foura further indicated Plaintiff wrote that he was going to let Internal Affairs and other people know about the incident more likely you're threating us in that email.  Plaintiff advised that he wasn't threating anyone.  Foura then indicated, he is going to make sure Plaintiff does not feel that way since he said he was threatened by staff, that he was going to make sure Plaintiff is safe.  Foura indicated he was going to take him to the Special Unit.

64.  Plaintiff was then arrested, seized, and placed in handcuffs and escorted to the SHU, deprived of his freedom and ability to move around the institution similar to other inmates.

65.  When Plaintiff arrived in the SHU all the correctional officers knew about him and there saying "this is the guy who don't like the Warden."

66.  According to Officer J. Phillips, also known as "Bull Dog" told Plaintiff "let's see how that will work for you. Now you're gonna see how we handle your problem. Officer Phillips further stated "keep listening to other inmates or those inmates claiming to say they know the way around." Phillips further stated enjoy your trip you are going to be in here for a very long time cause you're in SIS investigation, so there is no time frame for you." Plaintiff did not respond to the comments.

67.  Each and every time Plaintiff was taken to the shower by Phillips, he would hit him with the metal detector as to cause bruises, grabbing him really hard as to leave bruises and pushing him on the way to the shower without reason or provocation.

68.  Officer Phillips would refuse to take Plaintiff to recreation mandated by policy because he was "being punished."

69.  While in the SHU Plaintiff was verbally abused by Phillips and other officers.

70.  Approximately 1 week after being placed in the SHU, Plaintiff was taken out to see an SIS staff member ("SIS") and on the way Phillips and the other officer were making comments about my cellmate and how he gave Plaintiff a massage overnight and other sexually inappropriate comments. Plaintiff did not respond.

71.  When Plaintiff saw SIS, the staff member began defending Beaver as if he was a victim after lying to the Associate Warden and other staff members about the incident report that took place. SIS asked Plaintiff if Beaver was trying to put his hands on him and Plaintiff informed her No. Plaintiff told SIS Beaver threatened to put him in the SHU if I continued to bring up or pursue my issue about my custody level and the abusive use of management variables at the institution to keep inmates here. SIS staff member asked Plaintiff how many times Beaver said the word "fucking" and she was informed twice. SIS was further advised that Beaver got into Plaintiff's face.

72.  Plaintiff asked how long he would be in the SHU, SIS advised she did not know because she is doing a report so she can send it to her boss

14

at the Medium.  SIS indicated as soon as she hears something she will let Plaintiff know.  SIS never came back.

72.  Plaintiff repeatedly submitted requests to staff about his status to which no response was received.

73.  When Beaver would come to the SHU, he would make fun of Plaintiff.

74.  During the entire duration of Plaintiff's placement in the SHU, his correctional counselor never came, thus he would not file or pursue any administrative remedy to get released from the SHU or any other matter such as his illegal detention.

75.  While Plaintiff was in the SHU, he witnessed Inmate Raymond Mora being beaten by one of the correctional officer and Lieutenant before he was transferred the next day. This is how staff at Allenwood handle inmates who file complaints about staff.

76.  The staff in the SHU refused to allow inmate Juan Maldonado Mojica to take showers or even give him a phone call after his son died.  Juan Maldonado Mojica was also beaten by the staff.

77.  These are just some of the incidents that took place that placed Plaintiff in fear of his life simply because he attempted to file grievances about staff misconduct, and lack of training and abuse of authority. When you file complaints with the Regional Director of Central Office they reject it.

78.  Plaintiff was never provided or served with a copy of the Administrative Detention Order to justify his detention which demonstrates the lack of probable cause.

79.  Plaintiff was never accorded his hearings required after being placed in the SHU, nor did any segregation review officer visit or see him during the time from 2/14/2019 through his release from the SHU. 28 CFR 541.26.

80.  As a result of the beatings by staff, Plaintiff had terrifying nightmares which continue even now.  Plaintiff was unable to eat.  Plaintiff had and at times still have panic attacks and horrific anxiety as a result of his experience in the SHU.  No one from psychology ever came to see Plaintiff.

81.  As demonstrated by Exhibit '7', is an exampe of the institution's practice, policy and custom to lie, falsify documents and their effort to obstruct inmates from filing administrative grievances.  When confronted with the false statements and misrepresentations, they refused to address the matter.

82.  As demonstrated by Exhibit '8', is a documented incident of the institutions practice, policy, custom of threating bodily injury to inmates for raising concerns jeopardizing health and safety.  In this case inmate Silas Foster was threatened by Associate Warden M. Washington when he brought up the issue of Food Service refusing to prepare a meal in accord with a medically requested diet.  Washington told Foster "let me tell you something, you don't have any near fucking allergy disease.  I been doing this x,w,z years, your fucking facking."  Washington further stated "if we was anywhere else I would've put that knife in you.". Id. No action has been taken against Washington to remove him from the institution as a safety risk and Central Office rejected his complaint of the misconduct.

83.  The actions to which plaintiff was subjected was consistent with an institutionalized practice of the Federal Bureau of Prisons which was known to and ratified by defendants Hurwitz, Ormond, Howard, White, Beaver, Shreffler, Washington, White, Foura and Phillips, as well as the United States.

84.  Despite knowledge of these institutionalized practices, the defendants Hurwitz, Ormond, Howard, White, Shreffler, Foura have at no time taken any effective action to prevent BOP personnel from continuing to engage in this type of misconduct, including Defendant the United States.

85.  Defendants Hurwitz, Ormond, Howard, White had prior notice of the vicious propensities of defendants Washington, Beaver, Phillips, Foura, Foura-White, Thompson, Wallace, Schreffler, Blackwell; but took no steps to train them, correct their abuses of authority or to discharge their unlawful use of authority including the Untied States and conducted no competency assessment prior to putting them in these positions.

86. The Defendant United States failure to properly train defendants Hurwitz, Ormond, Howard, White, Washington, Beaver, Phillips, Foura, Foura-White, Thompson, Wallace, Shreffler, Blackwell, Thompson included the failure to instruct them in applicable policies, the law and appicable provisions

of proper and prudent use of force, it's policies and procedures and limitations.

87. Defendant United States authorizes, tolerated as institutionalized practices, and ratified the misconduct detailed above by:

    a.  failing to properly discipline, restrict and curtail employees, including defendants Thompson, Foura-White, Beaver, Hurwitz, Ormond, Howard, White, Washington, Wallace, Schreffler, Blackwell Phillips, known to be irresponsible in their dealing with prisoners.

    b.  failing to take adequate precaution in hiring, promoting, and retention of personnell, including specifically, defendants Foura-White, Beaver, White, Washington, Wallace, Schreffler, Blackwell, Phillips and others.  Failed to put an independent investigatory scheme to address BOP personnel misconduct.

    c.  failing to forward to the Office of Internal Affairs evidence of criminal acts committed by BOP personnel and attempts to intimidate, threaten or deter inmates from filing complaints; rejecting complaints when filed because the misconduct was not reported to the institution which they can retaliate;

    d.  failing to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of staff misconduct, but instead responding to these types of complaint with bureaucratic power and official calculated denials to mislead.

88. Defendant Hurwitz, Ormond, Howard have tolerated as institutionalized practices, custom and policy that BOP personnel can threaten, intimidate, harass, imprison inmates when the report staff misconduct.  When prisoners report staff misconduct, defendants Hurwitz, Ormond and Howard simply reject the complaints in favor of the inmates filing a complaint at the institutional level to jeopardize their safety and then egnage in a cover-up and denials when injury occurs.  The United States has refused to investigate these matters.

89. As recent as less than 6 months ago, SHU staff were transferred over the same abusive type of behavior, yet no disciplinary  action was taken so that they can continue to pursue their abusive conduct under someone else's watch.

90.  Defendants United States, Hurwitz, Ormond, has yet to issue a single memorandum advising staff that this type of misconduct will result in immediate termination to deter such conduct or terminate the individuals responsible.

COMMON LAW TORT CLAIMS
AGAINST THE UNITED STATES UNDER THE FEDERAL TORT CLAIMS ACT

COUNT I:   ASSAULT AND BATTERY

91.  Plaintiff re-alleges paragraphs 1 - 121 by reference and adopts all allegations contained therein as if fully stated.

92.  The actions of Officer Phillips hitting Plaintiff with the metal detector as to cause bruises, grabbing him hard as to leave bruises and pushing him on the way to the shower without provocation constitute assault and battery in violation of Pennsylvania common law.

93.  Defendants Hurwitz, Ormond, Howard, White, Schreffler, Foura, and Washington knew and had reason to know that Officer Phillips had a history of this type of prohibited behavior, yet took no action to curtail, deter or stop the assault and battery upon plaintiff and other prisoners.

94.  Officer Phillips had a duty to plaintiff to exercise due care and protect him.  Officer Phillips breached that duty when he committed assault and battery upon plaintiff causing bruises, pain and injury.

95.  Defendants Hurwitz, Ormond, Howard, White, Schreffler, Foura and Washington received notices of the abusive acts of Phillips aka Bulldog and others yet took no action to protect plaintiff or other prisoners.  Defendants Hurwitz, Ormond, Howard, White, Schreffler, Foura and Washington had a duty to protect plaintiff.  They breached that duty when the allowed bulldog to commit asssault and battery as to cause pain and injury to plaintiff.  Under the doctrine of respondéat superior defendants Hurwitz, Ormond, White Schreffler, Foura and Washington are liable to the plaintiff for the injuries from the assault and battery.

96.  The breach of their duty constituted assault and battery and was the direct and proximate cause of the plaintiff's pain and injury.  Under the FTCA the Untied States of America is liable to the plaintiff for the unlawful actions of Hurwitz, Ormond, Howard, White, Schreffler, Foura and Washington as they were acting within the scope of their employment as law enforcement officers of the United States.

18

COUNT II: FALSE IMPRISONMENT

97.   On February 14, 2019 Defendants Hurwitz, Ormond, Howard, White, Washington, Foura, Schreffler executed an erroneous anf false complaint stating that Plaintiff was under investigation as a result of violation of sume unknown rule or regulation.

98.   Plaintiff re-alleges paragraphs 1 - 96 by reference and adopts all allegations contained therein as if fully stated.

100.   As a result of this false complaint, Plaintiff was arrested, and placed in the SHU where he was deprived of being able to freely move about the compound, being able to freely contact his family among other things.

101.   Plaintiff's arrest was in violation of 18 U.S.C. § 3050.

102.   Defendants Hurwitz, Ormond, Howard, White, Washington, Foura, Schreffler, Beaver, Wallace knew and had reason to know that placing Plaintiff in the SHU when he posed no serious threat to the institution was a violation of his civil rights and Bureau of Prisons arrest policy and SHU placement policy.

103.   Defendants Hurwitz, Ormond, Howard, White, Washington, Foura, Schreffler, Beaver, Wallace knew and had reason to know that the institution has a practice, pattern, and custom of retaliating and threatening inmates with SHU placement in retaliation and as an abuse of authority.

104.   Defendants Hurwitz, Ormond, Howard, White, Washington, Foura, Schreffler, Beaver and Wallace  knew and had reason to know that Plaintiff was placed in the SHU as retaliation based on false statements by Beaver and his attempt to cover-up the misconduct of Foura-White.

105.   Plaintiff's placement in the SHU was retaliation for voicing concerns and exercising his right to file prison grievances as a result of abuse of authority.

106.   The basis for plaintiff's placement in the SHU was wholly without merit , known from day one, yet plaintiff was imprisoned in the SHU against his will from February 14, 2019 until the end of April.

19

107.   Defendants Hurwitz, Ormond, Howard, White, Washington, Foura, Beaver, Wallace having falsely imprisonmed Plaintiff against his will, repeatedly refused and neglected to take reasonable steps and action to ascertain the falsity of the Plaintiff's imprisonment after reciving notices.   The Defendants could have, during the duration of Plaintiff's false imprisonment exercised diligence in performing their duties and not reapeatedly refused to make reasonable and necessary factual review of the matter against Plaintiff.

108.   As a result of the injuries and loss set forth, Plaintiff seeks compensatory and punative damages for the false imprisonment against the defendant United States. Under the doctrine of respondeat superior defendants Hurwitz, Ormond, White, Schreffler, Foura and Washington are liable to plaintiff for injuries from false imprisonment

109.   The actions of Hurwitz, Ormond, White, Howard, Washington, Schreffler, Foura, Beaver, and Wallace set forth constitute false imprisonment in violation of Pennsylvania common law.   Under the FTCA, the Defendant United States is liable to the plaintiff for the unlawful actions of Hurwitz, Ormond, Howard, White, Washington, Foura, Beaver and Wallace as they were acting within the scope of their employment as law enforcement officers of the United States.

COUNT III:   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

110.   Plaintiff re-alleges paragraphs 1 - 109 by reference and adopts all allegations contained therein as if fully stated.

111.   Defendants Hurwitz, Ormond, Howard, White, Washington, Schreffler, Foura, Beaver, Phillips owe a duty of care to the plaintiff pursuant to 18 U.S.C. § 4042.

112.   Defendants Hurwitz, Ormond, Howard, White, Washington, Schreffler, Foura, Beaver, Phillips breached that duty when they arrested, detained in retaliation the plaintiff which resulted in emotional harm and physical harm. They created a substantial risk of harm by placing Plaintiff in a locked room from where they could inflict physical and bodily injury as they did to inmate Mojica  and Mora.

113.   The actions of Hurwitz, Ormond, Howard, White, Washington, schreffler, Foura, Beaver, Phillips set forth constitute negligent inflection of emotional

distress in violation of Pennsylvania law.  Under the FTCA, the Defendant
United States is liable to the plaintiff for the unlawful actions of Hurwitz,
Ormond, Howard, White, Washington, Schreffler, Foura, Beaver, and Phillips
as they were acting within the scope of their employment as law enforcement
officers of the United States.

114.  As a result of the actions of defendants allaged in paragraph 112,
plaintiff suffered injuries and plaintiff seeks compensatory damages.

COUNT IV: NEGLIGENCE

115.  Plaintiff re-alleges by reference and adopts all allegations contained
in paragraphs 1 - 114 as if fully stated.

116.  Defendants Hurwitz, Ormond, Howard, White, Washington, Schreffler,
Foura, Beaver, Wallace knew and had reason to know there was no probable cause
as this type of behavior is part of their normal pattern, custom and practice
of placing prisoners in the SHU as a form of retaliation to show off their
authority.  Despite knowing there was no probable cause or evidence of wrong
doing by Plaintiff, Defendants Hurwitz, Ormond, Howard, White, Washington,
Schreffler, Foura, Beaver, and Wallace left Plaintiff in the SHU for more
than two months.

117.  The lack of probable cause is demonstrated by the lack and failure
to deliver the Detention Order within 24 hours, a reivew by a disinterested
supervisory correctional officer or any subsequent reviews or hearings where
the inmate can attend.  The lack of probable cause is the fabrication of a
purported investigation.

118.  As a result of the negligence of Hurwitz, Ormond, Howard, White,
Washington, Schreffler, Foura, Beaver, and Wallace caused the Plaintiff pain
and suffering in which he suffered damages and harm.

119.  The actions of Hurwitz, Ormond, Howard, White, Washington, Schreffler,
Beaver and Wallace set forth constitute negligence in violation of Pennsylvania
common law.  Under the FTCA, the Defendant United States of America is liable
to the plaintiff for the unlawful actions of the defendnats set forth in ¶

21

116.

## COUNT V: NEGLIGENT SUPERVISION, HIRING, TRANING AND RETENTION

120.   Plaintiff re-alleges paragraphs 1 thru 119 by reference and adopts allegations contained therein as, if fully stated.

121.   Defendants Hurwitz, Ormond, Howard, White, Washington, Schreffler, Foura, Beaver, Wallace and Blackwell had a duty to protect plaintiff from being unlawfully detained, retaliated against by other staff members and were required to properly hire, train and supervise Horowitz, Ormond, Howard, White, Washington, Schreffler, Foura, Beaver, Wallace and Blackwell as well as others.

122.   The Defendants in paragraphs 121 had a duty to properly train Amy Foura-White on what is FOIA exempt information and what is not, use of force and BOP Policy requirements for placing inmates in the SHU.

123.   The Defendants at paragraph 121 had a duty to train Amy Foura-White to not engage in abuse of authority, and use of arbitrary and capricious actions against inmates and other types of misconduct. Similarly failing to train Hurwitz, Ormond, Howard, White, Washington, Schreffler, Foura, Beaver, Wallace and Blackwell how to do the jobs the were put in.

124.   The United States had a duty to train, supervise, hire and retain qualified individuals that follow the Bureau's policy and will not engage in misconduct.

125.   The defendants at paragraphs 121 have never been trained to not engage in misconduct and other illegal acts. The defendants at paragraphs 121 knew and should have know that allowing their subordinates to work unsupervised without any adequate review would result in them threatening, intimidating, retaliting and illegally detaining prisoners in violation of federal regulations and BOP policy, the law and allowing them to cover it up without disciplinary action or termination.

126.   The Defendants at paragraph  121 breached their duty when Plaintiff was falsely imprisoned and retaliated against for filing prison grievances, and allow the defendants to act i nthe manner they did as alleged herein.

127.   The actions of Hurwitz, Ormond, Howard, White, Washington, Schreffler, Foura, Beaver, Wallace, Blackwell set forth constitute negligent supervision,

hiring, training and retention in violation of Pennsylvania common law.  Under
the FTCA, the Defendant Untied States of America is liable to the platinff
for the unlawful actions of Hurwitz, Ormond, White, Washington, Schreffler,
Foura, Beaver, Foura, Foura-White, Wallace and Blackwell as they were acting
within the scope of their employment as law enforcement officer of the United
States.

128.  Plaintiff suffered injuries and damages as a result of the unlawful
acts of Hurwitz, ormond, White, Washington, Schreffler, Foura, Beaver, Foura-
White,Wallace and Blackwell.

## CONSTITUTIONAL CLAIMS AGAINST OFFICERS
## BIVENS

### COUNT V:  RETALIATION UNDER THE FIRST AMENDMENT

129.  Plaintiff realleges paragraphs 1 - 128 by reference as if fully set
forth and contained herein as if fully stated.

130.  The Plaintiff's placement in the SHU was predicated on the Plaintiff's
filing of a prison grievance that Amy Foura-White is poorly trained on FOIA
and unwarrantedly placed a management variable on him in violation of BOP
policy, using information that should have been removed from his Inmate Central
File.  The plaintiff's placement in the SHU was a direct result of Plaintiff
seeking a supervisory signature from the acting/ Unit Manager Beaver, Washington,
White in order to proceed to the next level or BP-9.

131.  As a result of Plaintiff engaging in filing grievances in the exercise
of his first amendment right, he was retaliated against and detained in the
SHU by Hurwitz, Ormond, Howard, White, Washington, Foura, Phillips, Beaver,
Blackwell, Wallace.

132.  As a result of Plaintiff's detention in the SHU he could no longer
receive regular visits from his family, he was denied correction of his BOP
records and deprived of his liberty to freely move about the compound.

133.  The actions of Hurwitz, Ormond, Howard, White, Washington, Foura,
Phillips, Beaver, Blackwell, Wallace and Foura-White as well as Schreffler

violated Plaintiff's first amendment right to file prison grievances without
retaliation under the U.S. Constitution. Defendants Hurwitz, Ormond, Howard,
White, Washington, Foura, Phillips, Beaver, Blackwell, Wallace, Schreffler
and Foura-White are liable to the defendant to the defendants for these unlawful
actions in violation of the Constitution.

## COUNT VI:   FOURTH AMENDMENT VIOLATION

134.  Plaintiff alleges pargraphs 1 -133 by reference as if fully set forth
and contained herein as if fully stated.

135.  The actions of Hurwitz, Ormond, Howard, White, Washington, Foura,
Phillips, Beaver, schreffler, Wallace, Blackwell violated Plaintiff's right
to be free from unreasonable seizure and detention.  Defendants Hurwitz, Ormond,
Howard, White, Washington, Foura, Phillips, Beaver, Schreffler, Wallace, Blackwell
is liable to the defendant for these unlawful actions in violation of the
Fourth Amendment to the Constitution.

136.  Plaintiff's seizure, and detention should have been based on probale
cause, however no such probable cause exist demonstrated by the failure to
deliver a detention order iwthin 24 hours of detention or ever or any objective
evidece that he was intending to escape or posed a serious threat as required
to detain him.  Moreover, the offenses for whcih a person may be arrested
by the BOP is limited under 18 U.S.C. § 3050 and the allegations against Plaintiff
did not support the unawarranted seizure and detention.

## COUNT VII:   FIFTH AMENDMENT

137.  Plaintiff realleges paragraphs 1 - 136 by refernce as if fully set
forth and contained herein as if fully stated.

138.  Plaintiff had a constitutional liberty interest under 28 C.F.R. § 541.26
which requires that the placement decision in the SHU be reviewed by an independent
supervisory correctional officer or Segregation Review Offical ("SRO") within
specific time frames and an opportunty attend the hearings.  Plaintiff had a
liberty in being free from the constraints imposed against inmates in administrative

segregation which is the same as persons serving disciplinary segregation as punishment.

139.   As described above, the actions of Hurwitz, Ormond, Howard, White, Washington, Foura, Phillips, Beaver, Schreffler, Wallace, Blackwell violated Plaintiff's constitutionally protected liberty rights by not assuring due process of law under the Fifth Amendment.

## COUNT VIII: DECLARATORY JUDGMENT
## INJUNCTIVE RELIEF, FED R.CIV.P. 65

140.   Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 - 139 of this complaint as if fully set forth herein.

141.   The Declaratory Judgment Act, 28 U.S.C. § 2201, grants this court authority to declare the plaintiff's legal rights when an actual controversy exists.

142.   Plaintiff and Defendants have adverse legal interests that are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in accordance with 28 U.S.C. § 2201.

144.   For the reasons stated above, Plaintiff is entitled to a declaration of his rights.

145.   A failure to enjoin Defendant's unconstitutional and unlawful conduct has and will continue to cause Plaintiff and others to suffer injury in that it will result in the deprivation of their First, Fourth, Fifth amendment rights and its protections against agency action that is arbitrary, capricious, and in bad faith, or contrary to law.

146.   No adequate remedy exists at law.

147.   Defendant's unconstitutional and unlawful conduct will also adversely affect the interests of numerous third parties without advancing public interests.

148.   Plaintiff is entitled to injunctive relief enjoining Defendants from continuing their unconstitutional and unlawful pattern, practice and custom

of conduct as alleged in this complaint.

149.  Defendant have no protectable interests in the continuation of their unconstitutional and unlawful conduct.

## PRAYER FOR RELIEF

Plaintiff JUAN POLANCO respectfully requests this Court enter judgment i nhis favor and:

A.  Declare that the Defendants have violated Plaintiff's First, Fourth and Fifth Amendment rights to the U.S. Constitution;

B.  Declare that the Defendant's practice, pattern, and custom of conduct as set forth in this complaint is arbitrary, capricious, in bad faith, and contrary to law;

C.  Declare that the Defendant's pattern, practice and custom as set forth in this complaint is negligent;

D.  On the claims of Negligence, Negligent Supervision, training, hiring and retention, False Imprisonment and Negligent Infliction of Emotional Distress. assault and body, the plaintiff asks the Court to enter judgment against the UNITED STATES OF AMERICA and hold UNITED STATES OF AMERICA liable to Plaintiff for compensatory damages, costs, and itnerests.

E.  On the Claim of assault and battery, the Plaintiff aks the Court to hold the UNITED STATES OF AMERICA liable to Plaintiff for compensatory damages, interests, costs and further relief.

F.  For the injuries that Plaintiff suffered as a result of the claims under the First, Fourth, and Fifth Amendment, Plaintiff asks the Court to hold defendant UNITED SATES OF AMERICA and officers Hugh Hurwitz, Justin Ray Ormond, Dougklas K. White, Darrin Howard, M. Washington, R. Schreffler, J. Foura, Bruce Beaver, Phillips, Wallace, Blackwell jointly and severally liable for compensatory damages and costs of this action.

G.  For violations of First, Fourth, and Fifth Amendment rights, plaintiff asks the Court to hold defendant Hugh Hurwitz, Justin Ray Ormond, Darrin Howard, Douglas K. White, M. Washington, R. Schreffler, J. Foura, Bruce Beaver, J. Phillips, J. Wallace and M. Blackwell further liable for punitive damages.

H.  Enjoin and restrain Defendants, their agents, employee, successors and all persons acting in concert or participating with them from enforcing, applying or implementing the views, positions, pattern, practices and custom as alleged in this complaint in violation of the Constitution and laws;

I.  Allow Plaintiff to amend the complaint;

J.  Grant Plaintiff costs of the litigation;

K.  Grant Plaintiff such other relief as may be necessary and appropriate or as the Court deems jsut and proper.

## JURY DEMAND

Plaintiff demans a jury trial of his constitutional claims against Hugh Hurwitz, Justin Ray Ormond, Darrin Howard, Douglas K. White, M. Washington, R. Schreffler, J. Foura, Bruce Beaver, J. Phillips, J. Wallace, M. Blackwell and any others.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff filed his SF95 - Administrative Claim Form for which Darrin Howard denied.  This instant suit commenced timely and within six months of the denial.

Plaintiff attempted to exhaust other adminsitrative remedies however due to his counselor's negligence in failing to come visit him in the SHU to provide the required forms for grievances and exhuastion, he is deemed to have exhausted it because it was unavailable.  See PS 5321.08.

I declare the foregoing to be true and correct to the best of my knowlege and belief under penalty of perjury pursuant to 28 U.S.C. § 1746.

Respectfully submitted,

Dated: May _13_, 2019.

Juan Polanco



Juan Blanco #28994-050
Federal Correctional Complex + Allenwood Low
P.O. Box 1000
White Deer, PA 17887

U S Dist Court - M D Pa
Attn: Clerk of Court
235 N Washington AVE
Scranton, PA 18503
United States

RECEIVED
SCRANTON

MAY 17 2019

PER _____
DEPUTY CLERK